**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RYAN M. DICKIE, | ) CASE NO. 3:17-cv-02414 |
| Plaintiff, | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| NANCY A. BERRYHILL, | ) |
| *Acting Comm'r of Soc. Sec.*, | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

Plaintiff, Ryan M. Dickie (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the court pursuant to the consent of the parties. (R. 16). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

**I. Procedural History**

On April 8, 2014, Plaintiff filed his applications for POD and DIB, alleging a disability onset date of March 26, 2014. (Transcript ("Tr.") 210-211). The application was denied initially

and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 97-157). Plaintiff participated in the hearing on September 20, 2016, was represented by counsel, and testified. (Tr. 51-96). A vocational expert ("VE") also participated and testified. *Id*. On January 13, 2017, the ALJ found Plaintiff not disabled. (Tr. 45). On September 18, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7). On November 17, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13 & 15).

Plaintiff asserts one assignment of error: the ALJ failed to follow the treating physician rule with respect to several of his treating sources. (R. 13).

## II. Evidence

### A. Relevant Medical Evidence[1]

Plaintiff alleged disability beginning on March 26, 2014, due to Chiari Malformation with surgery in November 2011; headaches; muscle weakness; status-post bilateral knee surgeries; sleep apnea; and asthma. (Tr. 238).

   **1. Treatment Records**

On March 4, 2014, just prior to the alleged onset date, Marlene C. Bultemeyer, M.D., diagnosed migraine, cervicalgia, and myalgia; she noted that Plaintiff should "consider

---

[1] Plaintiff's brief does not include a statement of relevant facts but states that he "agrees generally with the summary of medical facts contained in [the] ALJ['s] Opinion." (R. 13, PageID# 941). The court's order specifically states that "[a]ny fact in the transcript not referred to in a party's Statement of Relevant Facts may be deemed non-essential to the determination of the issues presented." (R. 6, PageID# 53). The court's recitation of the medical record, therefore, is primarily limited to those treating source opinions that Plaintiff alleges were improperly rejected.

2

counseling;" continued his current medications, and continued his exercise regimen. (Tr. 321).

On March 27, Plaintiff saw Joseph Kuhn, M.D., who opined Plaintiff should be off work from March 26, 2014 until April 14, 2014, due to neck pain. (Tr. 351).

On April 8, 2014, Plaintiff again saw Dr. Kuhn, stating that he needs a work slip, that he does not see specialist Dr. Lazoff until May 1, 2014, and that he cannot work due to neck and occipital pain. (Tr. 349). Plaintiff weighed 300 pounds, but there is no indication Dr. Kuhn performed a physical examination at that time. (Tr. 349).

On January 28, 2014, after a CT scan, Andrew W. Potter M.D.'s impression was "[s]uboccipital decompression without evidence of complication. No crowding of the cervicomedullary junction." (Tr. 306).

On September 10, 2014, magnetic resonance imaging (MRI) of the brain "showed incidental left maxillary sinus retention cyst, changes from posterior occipital/suboccipital decompressive surgery for treatment of Chiari I malformation with typical postoperative appearance. Otherwise, the brain was unremarkable." (R. 539). On the same date, an MRI of the cervical spine "showed chronic typical postoperative changes at the craniocervical junction subsequent to posterior occipital/ suboccipital decompressive surgery for treatment of Chiari malformation. There were chronic mild to minor degenerative changes. There was chronic mild right frontal stenos secondary to disk protrusion and likely tiny uncovertebral osteophytes without evidence of nerve root compression. There was mild degree of left paracentral disk protrusion at C5-6, increased in degree at interval abutting portion of the left side of the anterior margin of the spinal cord." (Tr. 539).

On November 3, 2014, x-rays of the hands, feet, and sacroiliac joints were negative. (Tr. 406-408).

### 2. Opinions Concerning Plaintiff's Functional Limitations

On September 11, 2013, approximately six months before the March 20, 2014 alleged onset date, nurse practitioner Elizabeth Wladecki completed a "Certification of Health Care Provider for Employee's Serious Health Condition" form so that Plaintiff could take leave under the Family and Medical Leave Act. (Tr. 339-342). She checked a box indicating that Plaintiff would be unable to perform his job functions due to his condition, which she described as "flare ups" of cervicalgia, migraines, and occipital neuralgia (Tr. 340). She estimated that flare-ups occur one-to-four times per month and last one-to-two days per episode (Tr. 341). Nearly six months later, on March 5, 2014, Marlene C. Bultemeyer, M.D., also signed the form. (Tr. 342).

On May 13, 2014, the State Agency provided Dr. Kuhn with a medical questionnaire that inquired about Plaintiff's impairments and work limitations. (Tr. 360-362). On May 26, 2014, Dr. Kuhn returned the form without completing it, noting only that he had first seen Plaintiff in July of 2004, and last saw him on April 8, 2014. *Id*.

On June 20, 2014, Dr. Lazoff completed a functional capacity questionnaire noting that he first saw Plaintiff on May 1, 2014, which was also the last date he saw him. (Tr. 389). He stated that Plaintiff had cervicalgia, headaches, facet joint syndrome, and myofascial pain syndrome. (Tr. 389). Plaintiff had difficulty with static neck positions and lifting, but had no limitations in his activities of daily living. (Tr. 390).

On July 2, 2014, State Agency physician Venkatachala Sreenivas, M.D., completed a physical RFC assessment. (Tr. 104-106). According to Dr. Sreenivas, Plaintiff could frequently lift and/or carry 10 pounds and occasionally lift and/or carry 20 pounds (Tr. 104). He could sit for 6 hours in an 8-hour workday and stand and/or walk for 4 hours in an 8-hour workday (Tr. 104-105). He could occasionally climb ramps and stairs, balance, stoop, kneel and crouch, but

never climb ladders, ropes and scaffolds or crawl. (Tr. 105). He needed to avoid all exposure to hazards. (Tr. 106).

On September 17, 2014, Dr. Lazoff completed another functional capacity questionnaire noting that he first saw Plaintiff four months earlier and last saw him in August of 2014. (Tr. 386). He stated that Plaintiff had cervical radiculopathy, cervicalgia, neck pain, and headaches since 2010. *Id*. Dr. Lazoff opined that Plaintiff could not do any of the following: lift more than one pound; work above shoulder level or below waist level; climb, bend, twist, stoop, or work above ground or at unprotected heights; and gaze frequently upwards, downwards, or to the sides. *Id*. Dr. Lazoff further opined Plaintiff was limited to walking for thirty minutes at a time, up to two hours per day. (Tr. 387).

On November 3, 2014, State Agency physician Michael Delphia, M.D., also completed an RFC that mirrored the opinion of Dr. Sreenivas. (Tr. 120-112).

On September 14, 2015, Drs. Tariq, Bachman, and Sherman from the Michigan Head Pain & Neurological Institute declined to complete forms setting forth Plaintiff's functional limitations, noting that it was their impression Plaintiff "is not highly motivated to return to work." (Tr. 682).

On January 4, 2016, Plaintiff underwent a functional capacity examination (FCE) conducted by physical therapist Maria Zerz. (Tr. 887). During the examination, Plaintiff could sit for 30 minutes with no difficulty, and stand for 30 minutes and walk for 40 minutes with mild difficulty. (Tr. 889). She observed that limitations in Plaintiff's strength and mobility "seem to be self-limited due to combination of fear of pain and chronic pain condition." (Tr. 891). He had visible muscle atrophy. *Id*. She believed he could safely handle medium exertional weights and could tolerate static positions for 30 to 60 minutes at a time. *Id*. She recommended he work 4

5

hours or less per day five days a week until his tolerance improves. *Id*.

## III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since March 26, 2014, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: status post-Chiari malformation (November 2011); cervicogenic headaches/migraines; obesity; cervical degenerative disc disease; status post bilateral knee surgeries (relocation of the patellae in 2005 with screw removal in 2010); polyarthralgias/ANA positive; depression/adjustment disorder and anxiety disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) in that the claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours out of an 8-hour workday and he can stand and/or walk for 6 hours out of an 8-hour workday. The claimant must have the ability to alternate between sitting and standing, at his option, every 30 minutes for 1 to 2 minutes, so long as he is not off task or has to leave the vicinity of the workstation. The claimant can never climb ladders, ropes, or scaffolds, and he can occasionally climb ramps and stairs, balance, crouch, kneel, stoop, and crawl. The claimant cannot move his head to the extreme ranges of motion, but he can move his body to accommodate this activity. He can only occasionally reach overhead with his bilateral upper extremities. The claimant can frequently handle with the bilateral upper extremities. He can have only occasional exposure to extreme cold, heat, and humidity along with dust, fumes, odors, gases, or other pulmonary irritants. The claimant cannot work around unprotected heights or

unprotected moving mechanical machinery. The claimant cannot perform any commercial driving. The claimant can only be exposed to moderate noise environments as set forth by the Dictionary of Occupational Titles. He can only be exposed to flashing lights on an occasional basis. The claimant can understand, remember, and carry out simple, routine tasks, make judgments on simple work, and respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day with few and expected changes. The claimant cannot perform work where the pace of productivity is controlled by an external source over which he has no control such as a conveyor belt or assembly line.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on ***, 1979 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 26, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 31-45).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v.*

*Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Weight Ascribed to Treating Sources**

In the first assignment of error, Plaintiff asserts that the ALJ erred by violating the treating physician rule with respect to the weight assigned to several alleged treating sources—Dr. Bultemeyer, nurse Wladecki,[2] Dr. Kuhn, and Dr. Lazoff. (R. 13, PageID# 942). The Commissioner counters that the ALJ properly considered these opinions. (R. 15, PageID# 962-966).

"Provided that they are based on sufficient medical data, 'the medical opinions and

---

[2] As explained below, the treating physician rule is inapplicable to nurse practitioners.

diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb

to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed the disputed opinions as follows:

> In terms of opinion evidence, in March 2014, Elizabeth Wladecki, N.P., and Marlene Bultemeyer, M.D., opined that as of February 8, 2013, the claimant was unable to perform any and all job functions when flare-ups of cervicalgia, migraines and occipital neuralgia occurred (Ex. 6F/23). The flare-ups occurred 1 to 4 times per month, with each flare up lasting 1 to 2 days (Ex. 6F/24). In addition, the claimant would need to attend follow up appointments for additional treatment (Ex. 6F/23-24). The record also reflects that in September 2013, Dr. Bultemeyer prescribed the claimant a handicapped parking placard (Ex. 6F/9).

> The undersigned assigned little weight to the opinions of Ms. Wladecki and Dr. Bultemeyer for several reasons. First, their opinions indicate that the claimant became disabled more than a year prior to when he stopped working based upon his own self-reports (Testimony). Second, the determination as to whether the claimant is disabled is an opinion reserved for the Commissioner (Social Security Ruling 96-5p ). Third, Ms. Wladecki and Dr. Bultemeyer failed to identify the Claimant's functional limitations or restrictions and assess his work-related abilities on a function-by-function basis (Social Security Ruling 96-8p ).

> In April 2014, Joseph Kuhn, D.O., noted that the claimant was off work from

> March 26, 2014 through April 14, 2014 (Ex. 7F/3). Subsequently, Dr. Kuhn noted that the claimant … would be off work from April 14, 2014 until May 5, 2014, when he was to see specialist (Ex. 7F/1).
>
> I also assigned little weight to the opinions of Dr. Kuhn. As was the case with opinions of Ms. Wladecki and Dr. Bultemeyer, Dr. Kuhn's opinion fails to identify the claimant's limitations on a function-by-function basis, and it is conclusory in nature on the ultimate issues of disability, which is reserved for the commissioner (SSR 96-5p, SSR 96-8p ). In addition, I note that Dr. Kuhn's opinion only addresses a period of time spanning approximately 2 months and does not reflect the claimant's level of impairment over a consecutive 12-month period (Social Security Ruling 82-52).
>
> In addition, the record includes the opinions of Thomas L. Lazoff, D.O., from August 2014 (Ex. 10F/2-3). According to Dr. Lazoff, the claimant could not lift more than 1 pound (Ex. l0F/3). The claimant could not perform work above shoulder level or below waist level, and could not bend, twist, stoop, work above ground or at unprotected heights (*Id*.). The claimant … could not perform frequent gazing upwards, downwards or to the sides (*Id*.). The claimant could walk for 30 minutes at a time, up to 2 hours per day (*Id*.).
>
> I assigned some weight to the opinion of Dr. Lazoff, based upon the claimant's cervical degenerative disc disease, which is reflected in the residual functional capacity restrictions regarding light work along with limited overhead reaching and neck movement (see, e.g., Ex. 1F/1; Ex. 4F/5-8; Ex. 12F/135; Ex. l0F/7). However, I assigned little weight to the remainder of Dr. Lazoff's opinions, as these opinions are not supported by the objective medical evidence, and they are contradicted by the results of the functional capacity examination and the claimant's recitation of his activities of daily living (Ex. 19F/3-7; Testimony; Ex. 5E/2-5; Ex. 8F/3).

(Tr. 38-39).

Plaintiff's brief does not identify with any specificity which opinions he believes were improperly rejected. (R. 13, PageID# 942-945). Rather, Plaintiff makes broad conclusory statements alleging that the ALJ's discussion with respect to several physicians was insufficient and ostensibly failed to provide good reasons. *Id*. No analysis, however, is provided. *Id*. The court cannot take such a broad and undeveloped assertion and transform it into a substantive argument without improperly becoming an advocate for Plaintiff. It is well established that

"issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See. e.g., Kennedy v. Commissioner*, No. 03-1276, 2003 WL 23140056, at *1 (6th Cir. Dec. 12, 2003) (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050 (1998) (same); *McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by claimant). The *McPherson* court aptly stated: "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson*, 125 F.3d at 995-996 (internal citations omitted); *accord Paul v. Detroit Edison Co.*, 642 Fed. App'x 588, 592 (6th Cir. 2016); *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15-cv-666, 2017 U.S. Dist. LEXIS 188005, *8 (N.D. Ohio, Nov. 14, 2017) (declining to "add flesh to the bones of a party's skeletal … argument") (Carr. J.). Although the court deems any unidentified shortcomings in the ALJ's analysis of the above referenced opinions waived, the court finds no general shortcoming in the ALJ's assessment of the treating source or other opinions.

Furthermore, nurse Wladecki's opinions are not entitled to the protections of the treating physician rule. Pursuant to the regulations in effect at the time the ALJ rendered the opinion on January 13, 2017, nurse practitioners are not included among the five identified types of "acceptable medical sources," but rather are considered "other sources." *Compare* former 20 C.F.R. §§ 404.1513(a) & 416.913(a) with former 20 C.F.R. §§ 404.1513(d)(1) & 416.913(d)(1).[3]

---

[3] While recent revisions to the regulations now include licensed advanced practice registered nurses among the list of "acceptable medical sources," the revisions are expressly *not* retroactive. *See* 20 C.F.R. §§ 404.1502(a)(7) & 416.902(a)(7) ("Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or

Nonetheless, information from "other sources" such as nurse practitioners "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at * 2-3 (Aug. 9, 2006). A recent decision from within this district explained the ALJ's duties in connection with opinions from "other sources" as follows:

> In evaluating the opinions from "other sources," an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted); *see* SSR 06–03P. The ruling's explanation of the consideration to be afforded "other source" opinions provides:
>
>> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case*. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.
>
>> SSR 06–03P, 2006 WL 2329939, at *6 (emphasis added).
>
> Given this guidance, "it will rarely be enough for the commissioner to silently 'consider' the above-mentioned factors in deciding how much weight to give to

---

her licensed scope of practice (**only with respect to claims filed (see § 416.325) on or *after* March 27, 2017**) (emphasis added)); *see also Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (finding the ALJ has the discretion to determine the appropriate weight to accord the opinion from an "other source" such as a chiropractor).

an 'other source' who has seen the claimant in the source's professional capacity." *Estep v. Comm'r of Soc. Sec.*, Case No. 15cv10329, 2016 WL 1242360, at *3 (E.D. Mich. Mar. 30, 2016); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("An ALJ must consider other-source opinions and 'generally should explain the weight given to opinions for these 'other sources[.]'") (alteration in original) (quoting SSR 06–03P). Rather, "[t]he Sixth Circuit has repeatedly recognized that the commissioner must make an adequate record of the commissioner's consideration of an 'other source' who has seen the claimant in the source's professional capacity." *Estep*, 2016 WL 1242360, at *3 (collecting cases); *Hatfield v. Astrue*, No. 3:07–cv–242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (noting that "[t]he Sixth Circuit...appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight [given to an 'other source' opinions], as opposed to leaving the decision whether to explain to the ALJ's discretion") (citing *Cruse*, 502 F.3d at 541). **Still, "[s]o long as the ALJ addresses the opinion [from an 'other source'] and gives reasons for crediting or not crediting the opinion, the ALJ has complied with the regulations."** *Drain v. Comm'r of Soc. Sec.*, No. 14cv12036, 2015 WL 4603038, at *4 (E.D. Mich. July 30, 2015) (citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)).

*Hirko v. Colvin*, No. 1:15cv580, 2016 WL 4486852 at *3 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (emphasis added).

Here the ALJ clearly complied with the ruling as it did not ignore nurse Wladecki's opinion, nor did the ALJ consider it in silence. Her opinion indeed does not set forth any functional limitations or restrictions, as expressly noted by the ALJ, and it predates the alleged onset date. (Tr. 39). To the extent nurse Wladecki opines that Plaintiff is disabled or unable to work, such an opinion is not entitled to any weight as that is an issue reserved for the Commissioner. "Indeed, 20 C.F.R. § 404.1527(d)(1) and (3) now provide explicitly that no special significance will be given to the source of an opinion—such as whether a claimant is disabled or unable to work—reserved to the Commissioner of Social Security." *Quisenberry v. Comm'r of Soc. Sec.*, No. 17-2408, 2018 WL 6264566, at *7 (6th Cir. Nov. 29, 2018) (*citing Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (recognizing same in an earlier version of the applicable regulations)). In addition, the court is skeptical that Dr. Bultemeyer's signature nearly

15

six months later on a form completed by nurse Wladecki transforms the opinions therein into that of the physician. Nevertheless, assuming *arguendo* the opinions therein can be fairly attributed to Dr. Bultemeyer, the ALJ's analysis remains sufficient. Even a statement from an acceptable medical source that an individual is unable to work is *not* a "medical opinion" under the above cited regulation, and, as such, cannot be ascribed any special significance.

The ALJ's discussion of Dr. Kuhn's opinions is similarly sufficient to the extent they opine that Plaintiff is disabled or unable to work. Moreover, as the ALJ recognized, Dr. Kuhn did not indicate that Plaintiff was permanently unable to work or could not do so for a twelve-month period. (Tr. 39). The ALJ also accurately points out that Dr. Kuhn did not assess any functional limitations or restrictions. *Id*. Plaintiff has pointed to no evidence that this finding was inaccurate, and fails to identify any specific limitation from Dr. Kuhn that the ALJ rejected.

Finally, unlike the above sources, Dr. Lazoff did assess some functional limitations. However, Dr. Lazoff's opinion from June 20, 2014, cannot be construed as coming from a "treating source". (Tr. 388-390). The opinion plainly indicates that he had seen Plaintiff on only one occasion—May 1, 2014. (Tr. 389). The Sixth Circuit has rejected the notion that a treating physician relationship can arise from a single visit:

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records. *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). Dr. Ruff examined Mr. Barker on only one occasion, and the rationale of the treating physician doctrine simply does not apply here. Dr. Ruff's report was entitled to no special degree of deference. *Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989).

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). There is no ongoing treatment relationship as contemplated by the regulations when a doctor examines a claimant only once and writes a

physical capacity evaluation. *Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007) (citing *Daniels v. Apfel*, No. 00-5009, 2000 WL 1761087, at *2 (10th Cir. 2000)). It follows, therefore, that an ALJ's decision need not satisfy the treating physician rule and provide "good reasons" when rejecting the opinions from a one-time examining physician. *Smith*, 482 F.3d at 876; *Kornecky v. Commissioner*, No. 04-2171, 2006 WL 305648, at *9-*10 (6th Cir. Feb. 9, 2006).

Dr. Lazoff's second opinion from September 17, 2014, indicates that he had seen Plaintiff at least one more time. (Tr. 385-387). Assuming *arguendo* that a treating relationship had developed by the time of this second opinion, the court finds the ALJ gave good reasons for assigning it some weight and ascribing little weight to significant portions of the opinion. The ALJ identifies three reasons, supported by record citations, for rejecting the more extreme limitations: (1) lack of objective medical evidence, (2) the results of the FCE contradict the opinion, and (3) the opinion is contradicted by the claimant's recitation of his activities of daily living. (Tr. 39). In order to find these identified reasons fail to constitute good reasons, it is incumbent on Plaintiff to point to evidence of record that undermines the ALJ's conclusions. Plaintiff has not done so here and has not met his burden of showing the ALJ's decision is not supported by substantial evidence.

## IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: March 25, 2019